```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                              :
                                                    :
FE M. LAVANDIER,                                    :        Chapter 7
                                                    :        Case No.: 14-12553 (SMB)
                       Debtor.                      :
--------------------------------------------------------X
```

## MEMORANDUM DECISION DENYING MOTION
## TO REOPEN THE CHAPTER 7 CASE

**A P P E A R A N C E S:**

MERLE, BROWN & NAKAMURA, P.C.
*Attorney for Creditor Envios de Valores La Nacional Corp.*
90 Broad Street, Suite 2201
New York, NY 10004

      Andrew Peck, Esq.
           Of Counsel

WILLIAM P. BONOMO, ESQ.
*Attorney for the Debtor*
325 W. 38th Street, Suite 603
New York, NY 10018

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      Envios de Valores La Nacional Corp. ("LAN"), successor-in-interest to creditor Mateo Express, Inc. ("Mateo"), moved to reopen this chapter 7 case, vacate the discharge order and permit the late-filing of a complaint to determine the dischargeability of a debt owed by the Debtor, Fe M. Lavandier. LAN contends that the discharge order was entered as the result of a mutual mistake of the parties and that the case should be reopened so that the Court may consider its meritorious complaint. For the following reasons, the motion is denied.

## BACKGROUND

LAN is a money transmitter licensed to conduct business in the state of New York. Under New York banking law, licensed money transmitters are authorized to appoint agents to accept cash funds from customers for transmission to beneficiaries overseas. (*Certification of Andrew R. Peck in Support of Creditor's Motion to* [sic] *for an Order Re-Opening the Bankruptcy Case and Vacating the Order of Discharge to Permit the Filing of Creditor's Complaint to Determine Dischargeability of Debt*, dated Apr. 28, 2015 ("*Peck Certification*"), at ¶ 8.)[1] In 2009, Mateo, LAN's predecessor-in-interest, entered into an agency agreement with John Paul Multiservices, Inc. ("JPM"), an entity owned and operated by Lavandier. (*Id.* at ¶ 9.) The agency agreement provided that Lavandier would hold funds collected from customers in trust and as a fiduciary of Mateo. (*Id.* at ¶ 12.) Lavandier also executed an indemnity and guaranty agreement, personally guaranteeing the payment of all funds owed by JPM to Mateo. (*Id.* at ¶ 11.)

By late 2013, JPM owed a substantial amount of money to Mateo. (*Id.* at ¶ 13.) Mateo filed a suit for conversion and enforcement of the guaranty against JPM and Lavandier in state court. (*Id.* at ¶ 15.) The defendants failed to file an answer, and the court entered default judgment against them jointly and severally in the amount of $54,044.57. (*Id.* at ¶ 18.) Mateo also moved for punitive damages, and the court scheduled a hearing to determine the punitive damages award. (*Id.* at ¶ 19.)

---

[1] The *Peck Certification* is attached as Exhibit B to the *Motion of Creditor, Envios de Valores La Nacional Corp., Pursuant to Section 350 of the Bankruptcy Code and Bankruptcy Rules 5010 and 9024 for an Order Re-Opening the Bankruptcy Case and Vacating the Order of Discharge to Permit the Filing of Creditor's Complaint to Determine Dischargeability of Debt*, dated Apr. 28, 2015. (ECF Doc. # 17.)

Lavandier commenced this bankruptcy case on September 8, 2014, before the punitive damages hearing was held. (*Id.* at ¶ 21.) The Bankruptcy Noticing Center sent a notice to all scheduled creditors, including Mateo's (and now LAN's) counsel, informing the recipients that the meeting of creditors under 11 U.S.C. § 341(a) was scheduled for October 10, 2014. (*Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines*, filed Sept. 10, 2014 (ECF Doc. # 6).) The notice also advised all creditors that a complaint objecting to the debtor's discharge under Bankruptcy Code § 727(a) or to determine that the debt owed to the creditor was not dischargeable under Bankruptcy Code § 523(a)(2), (4) or (6) had to be filed by the date listed on the front of the notice, to wit, December 9, 2014. (*Id.*)

Following the meeting of creditors, Andrew R. Peck, Esq., LAN's counsel, served a deposition notice on William P. Bonomo, Esq., Lavandier's attorney, seeking to depose Lavandier on November 11, 2014. (*Peck Certification* at ¶ 23.) Bonomo informed Peck that he and/or his client were unavailable on that date and suggested several alternative dates. (*Id.* at ¶ 25.) The attorneys eventually settled on December 29, 2014. Peck informed Bonomo that the proposed date was after the "deadline to object to the discharge of its debt," (*id.* at ¶ 27), and Bonomo responded "that we could file a stipulation of adjournment, extending the time to object to Creditor's discharge and to permit the December 29, 2014 deposition of the debtor to take place." (*Id.* at ¶ 28.)

According to Peck, Bonomo assured him that "all we need to do" is file the stipulation of adjournment. (*Id.* at ¶ 29.) "In reliance on counsel's statement," Peck signed the stipulation, sent it to Bonomo, and Bonomo signed and returned it to Peck with instructions to file it at his [Peck's] convenience. (*Id.* at ¶ 30 & Ex. 5.) According to Bonomo, he told Peck to file the stipulation, implying that he did not give Peck any other advice and assumed that Peck would

3

know that the Court had to "so order" the stipulation. (*Certification by William P. Bonomo in Support of Debtor's Opposition to Creditor's Motion for an Order Re-Opening the Bankruptcy Case and Vacating the Order of Discharge to Permit the Filing of Creditor's Complaint To Determine Dischargeability of Debt*, dated June 7, 2015, at ¶ 6 (ECF Doc. # 20-1).)

In any event, Peck filed the stipulation on November 19, 2014. (*Peck Certification* at ¶ 31; *see Stipulation of Adjournment*, dated Nov. 14, 2014 ("*Stipulation*") (ECF Doc. # 10).) By its terms, the *Stipulation* extended "the deadline for filing an objection to the debtor's discharge in bankruptcy" to January 23, 2015, seventy days late, to permit LAN to conduct a Rule 2004 examination of Lavandier scheduled for December 29, 2014. The *Stipulation* did not extend the deadline to file a proceeding to determine the dischargeability of Lavandier's debt to LAN under Bankruptcy Code § 523(a).

Although Peck filed the *Stipulation* on the electronic docket, he never submitted it to the Court for its approval. Hence, there was no Court order extending the time to object to Lavandier's discharge. As a result, and in accordance with the requirements of the Federal Rules of Bankruptcy Procedure ("Federal Bankruptcy Rules") which are discussed below, the Court entered an order discharging Lavandier on December 23, 2014. (*Discharge of Debtor*, dated Dec. 23, 2014 ("*Discharge Order*") (ECF Doc. 13).) The second page of the *Discharge Order* provided an explanation of the effect of the discharge to recipients of the *Order*. It stated that certain debts were not discharged, including "[d]ebts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged." (*Id*., p. 2 of 2.) According to the electronic docket, the *Discharge Order* was electronically mailed to Peck.

4

Peck deposed Lavandier as scheduled on December 29, 2014.  On January 8, 2015, Peck asked Bonomo to consent to vacate the *Discharge Order*.  Bonomo indicated that he was not opposed but had to seek his client's consent.  (*Peck Certification* at ¶ 37.)  On January 14, 2015, however, Bonomo informed Peck that he would not consent.  (*Peck Certification* at ¶ 38.)  One week later, the Court entered an order of final decree, discharging the chapter 7 trustee and closing the case.  (*Order of Final Decree*, dated Jan. 21, 2015 (ECF Doc. # 15).)[2]  The stipulated deadline to object to Lavandier's discharge expired two days later.

LAN did nothing for three months.  It was not until April 28, 2015, that it filed the instant motion to reopen the case, vacate the *Discharge Order* and file a complaint to determine that Lavandier's debt is not dischargeable under Bankruptcy Code § 523(a)(4).  Citing the parties' mutual mistake about the need to obtain Court approval of the *Stipulation* and invoking Rule 60(b)(1) of the Federal Rules of Civil Procedure ("Rule 60(b)(1)"), LAN argued that the "discharge of Creditor's claim should never have been granted due to Debtor's defalcation of trust funds while in a fiduciary capacity, or in the alternative Debtor's embezzlement of Creditor's trust funds, and due to the mutual mistake of the parties."  (*Memorandum of Law in Support of Creditor's Motion for an Order Re-Opening the Bankruptcy Case and Vacating the Order of Discharge to Permit the Filing of Creditor's Complaint to Determine Dischargeability of Debt*, dated Apr. 28, 2015, at 1 (ECF Doc. # 17-3).)[3]

---

[2]   The clerk did not actually close the case until January 28, 2015.  However, I deem the case to have been closed in accordance with the *Order of Final Decree* when it was entered.

[3]   The *Peck Certification* also referred in passing to equitable estoppel as a basis to grant the requested relief.  (*Peck Certification* at ¶ 40.)  LAN did not elaborate or brief the issue and I consider it abandoned.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed.").

5

## DISCUSSION

Bankruptcy Code § 350 allows the court to re-open a closed case for cause. If the court determines that the movant is not entitled to the underlying relief it seeks, the court may deny the motion to reopen because reopening the case would be meaningless. *In re Euro-American Lodging Corp.*, 549 Fed. Appx. 52, 54 (2d Cir. 2014); *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1307 (2d Cir. 1996). Accepting LAN's version of the events, there are two mistakes in this case. The first, relied on by LAN, concerns the failure to obtain Court approval of the *Stipulation*. Rule 60(b)(1), made applicable to this contested matter by Federal Bankruptcy Rule 9024, permits a court to grant relief from a final judgment or order based on "mistake, inadvertence, surprise or excusable neglect." Ignorance of the law, however, including procedural rules, does not ordinarily justify relief under Rule 60(b)(1). *Nemaizer v. Baker*, 793 F.2d 60, 62 (2d Cir. 1997) ("[W]e have consistently declined to relieve a client under subsection (1) of the 'burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload.'") (quoting *United States v. Cirami,* 535 F.2d 736, 739 (2d Cir.1976)   12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.41[1][c][iii], at 60-103 (3d ed. 2015).

The mistake relating to the *Stipulation* was a mistake of law. Federal Bankruptcy Rule 4004(b)(1) provides that the bankruptcy court may extend the deadline to object to the debtor's discharge on motion by a party, after notice and hearing and for cause shown. Litigants are not free to enter into private agreements to change deadlines mandated by statute or rule. *In re Snyder*, 102 B.R. 874, 875 (Bankr. S.D. Fla. 1989). The Federal Bankruptcy Rule 4004 plainly requires a court order even where the parties stipulate to the extension. *Dombroff v. Greene* (*In*

6

*re Dombroff*), 192 B.R. 615, 622 (S.D.N.Y. 1996) ("A stipulation is ineffective to extend time to file objections to discharge unless 'so ordered' by the court."); *Franzone v. Elias* (*In re Elias*), No. 13-cv-01269, 2014 WL 1248042, at *4 (E.D.N.Y. Mar. 25, 2014) (same); *see* FED. R. BANKR. P. 9006(b)(3) ("The court may enlarge the time for taking action under Rules . . . 4004(a) [and] 4007(c) . . . only to the extent and under the conditions stated in those rules."). Absent an order extending the deadline, the bankruptcy court *must* issue a discharge unless one of the exceptions set out in Federal Bankruptcy Rule 4004(c)(1) applies. Rule 4004(c)(1) does not mention stipulations extending the deadline and none of the other exceptions apply in this case. In short, a mistake relating to the failure to obtain the Court's approval of the *Stipulation* amounted to ignorance of the law and does not justify relief under Rule 60(b)(1).[4]

Even if the *Discharge Order* was issued as the result the attorneys' mutual mistake regarding the need to have the *Stipulation* "so ordered," this mistake had no effect on LAN's claim that Lavandier's debt was non-dischargeable. Instead, the second mistake, also one of law, was the fatal one. LAN clearly believed that the entry of the *Discharge Order* barred its non-dischargeability claim under Bankruptcy Code § 523(a)(4), confusing two separate principles of bankruptcy law. A debtor is entitled to a discharge of her pre-petition debts unless a party in interest objects and proves a ground to deny the discharge under 11 U.S.C. § 727(a). However, "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt" listed in one of the subparagraphs of 523(a). 11 U.S.C. § 523(a). Some of the exceptions listed in § 523(a) are self-executing, and the creditor is not required to do anything. *United States ex rel. Minge v. Hawker Beechcraft Corp.* (*In re Hawker Beechcraft, Inc.*), 515 B.R. 416, 422

---

[4] Many of the cases also consider counsel's ignorance of the law in connection with excusable neglect. LAN has not relied on excusable neglect as a basis to vacate the *Discharge Order.*

7

(S.D.N.Y. 2014).  Other exceptions, specifically those under Bankruptcy Code § 523(a)(2), (4) and (6), must be filed within sixty days of the date first set for the meeting of creditors.  11 U.S.C. § 523(c)(1); FED. R. BANKR. P. 4007(c).  If the creditor fails to meet this deadline, the claim will be discharged along with the debtor's other dischargeable debts.  *Hawker Beechcraft*, 515 B.R. at 422.  In this case, the original deadline was December 9, 2014, as stated in the notice sent to creditors at the commencement to the case.[5]

Although objections to discharge and proceedings to determine the dischargeability of specific debts are different concepts, the *Stipulation* ignored the distinction.  LAN's counsel drafted a stipulation that extended LAN's time to object to the discharge (under Federal Bankruptcy Rule 4004) but did not extend the deadline for filing a complaint to determine the dischargeability of Lavandier's debt (under Federal Bankruptcy Rule 4007).  However, LAN never intended to object to the discharge and has never stated any basis to do so.  Instead, LAN always intended to seek a declaration that notwithstanding the discharge Lavandier's debt was non-dischargeable under 11 U.S.C. § 523(a)(4) based on Lavandier's defalcation while acting in a fiduciary capacity and embezzlement.  (*See Peck Certification*, Ex. D (proposed "Complaint to Determine the Dischargeability of Debt).)

Failing to separate these legally distinct concepts, LAN's counsel mistakenly thought that the entry of the *Discharge Order* foreclosed a determination that Lavandier's debt was not dischargeable.  In this regard, LAN has repeatedly argued on this motion that the *Discharge Order* was issued in error based Lavandier's defalcation and embezzlement, but Lavandier's defalcation and embezzlement, even if proved, would not have affected her right to a discharge

---

[5]    It was also the deadline for filing an objection to discharge under Code § 727(a).

8

of her other debts under 11 U.S.C. § 727(a).  Moreover, Peck completed Lavandier's deposition on December 29, 2014, believing that the *Stipulation* gave him until January 23, 2015 to file LAN's § 523(a)(4) complaint.  Yet LAN did not file the complaint, and instead, Peck asked Bonomo to agree to vacate the *Discharge Order*.  (*Peck Declaration* at ¶ 37.)  This was wholly unnecessary, and the *Discharge Order* even stated that it did not discharge "[d]ebts that the bankruptcy court specifically has decided *or will decide* in this bankruptcy case are not discharged."  (Emphasis added.)

LAN has never argued that it failed to file the § 523(a)(4) complaint because it discovered, too late, that the *Stipulation* was unenforceable and time had run out.  Rather, it failed to file the § 523(a)(4) complaint because it mistakenly believed that the *Discharge Order* foreclosed the claim.  Of more significance to the motion, LAN never requested or obtained an extension of time under Federal Bankruptcy Rule 4007 to file a complaint to determine the dischargeability of Lavandier's debt.  That deadline ran out on December 9, 2014, prior to the *Discharge Order*.  The claim is time-barred under Federal Bankruptcy Rule 4007(c), and the Court lacks the authority to grant *nunc pro tunc* relief based on a motion filed after the deadline has expired. FED. R. BANKR. P. 4007(c) ("On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision.  The motion shall be filed before the time has expired."); *cf. Dombroff*, 192 B.R. 615, 617 (discussing extensions

under Federal Bankruptcy Rule 4004).  Accordingly, no purpose would be served by reopening the case to permit LAN to file a time-barred claim.

    Submit order.

Dated: New York, New York
        August 26, 2015

                                              /s/ *Stuart M. Bernstein*
                                              STUART M. BERNSTEIN
                                              United States Bankruptcy Court